**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SHARON BOZEMAN                                                                                          PLAINTIFF

v.                                              No. 4:05CV01512 JLH

UNILEVER BEST FOODS NORTH AMERICA                                              DEFENDANT

**OPINION**

Sharon Bozeman brought this action against her employer, Unilever Best Foods North America, alleging race and sex discrimination in violation of Title VII. She alleged that Unilever discriminated against her on the basis of her race, color, and sex when Unilever removed her from her training position in the mix mill area of Unilever's Little Rock plant, thereby denying her a pay increase. She also alleged that she was subjected to a hostile work environment while she was training in the mix mill area. Unilever moved for summary judgment on all of Bozeman's claims. The Court held oral argument on Unilever's motion for summary judgment. At oral argument, Bozeman conceded her hostile work environment and sex discrimination claims. For the following reasons, summary judgment is granted on Bozeman's remaining claims.

**I.**

A court should enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct.

at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

The pertinent facts in this case taken in a light most favorable to Bozeman are as follows.[1] Bozeman is a black female. She was an employee at Unilever's Little Rock facility, which manufactures peanut butter. Unilever had a formal training and advancement program called Pay for Competency. According to the pay for competency guidelines, the order of employee training was determined by a plant-wide training list. Each training slot was awarded according to the list. All employees were initially placed on the list in alphabetical order. When the needs of the plant required training in a specific area, the Unilever employee who was next on the training list would be given the choice of whether to accept the training in the area of the need or to pass the slot to the next person on the list without losing the position on the list. When an employee accepted an opportunity to train for a particular position, that employee was initially placed in a training position. Following completion of the training protocol for a position, the employee was certified, which

---

[1] Bozeman has not complied with Local Rule 56.1(c) because she did not file, in addition to her response and brief, a separate, short and concise statement of material facts as required by Local Rule 56.1(b), so the Court could assume that all facts in the moving party's statement of material facts are undisputed. The result is the same whether the Court takes the moving party's statement of facts as undisputed or whether the Court looks to the substance of the evidence and arguments submitted.

meant that the employee was qualified to be assigned to the position in question. The employee then received a pay increase.

In late February or early March 2003, Bozeman and Evelyn Dunn, a white female, were offered training positions in the mix mill area. Dunn began training on April 14, 2003; successfully completed training in the mix mill area; and was certified on November 6, 2003. Bozeman did not begin training until September 29, 2003. When Bozeman began training, Kevin Kendrick, a white male, was Bozeman's shift coordinator and was responsible for her evaluations. Other Unilever employees involved in supervising Bozeman's training in the mix mill area were Tom Rackley, Michael Greenwood, Michael Mosely, Lee Pitts, Adam Humphreys, and Don Johnson. Johnson, Greenwood, and Pitts are black. Bozeman was removed from training on June 25, 2004, before she was certified. The training and evaluation pillar, the committee that was responsible for all decisions regarding the training of employees at Unilever, cited Bozeman's poor evaluations as the reason for her removal from training. Johnson, Pitts, and Marcus Bryant – all of whom are black – were members of the pillar, were present at the meeting in which the pillar decided to remove Bozeman from training, and concurred in the decision. Bozeman was moved to the bottom of the training list. Michael Edwards, a black male, was the next employee on the plant-wide training list after Bozeman's removal. Edwards began training for the position of mix mill operator on July 12, 2004, and Kendrick was Edwards' shift coordinator. Edwards successfully completed training and was certified on January 3, 2005.

Bozeman filed an EEOC charge of discrimination regarding her removal from the mix mill training position. On the EEOC charge, Bozeman stated, "On June 10, 2004 I was denied promotion to the mix and mill area. Similarly situated whites were not treated in the same manner." Bozeman

received a Notice of Right to Sue from the EEOC on July 21, 2005, and commenced this suit on October 14, 2005.

### III.

Bozeman alleges that she was discriminated on the basis of her race[2] when she was removed from her training position in the mix mill area. In the absence of direct evidence of discrimination, a Title VII claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that (1) she was a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004). If the employer offers such a reason, the plaintiff must then present evidence sufficient to create a fact issue as to whether the employer's articulated reason is pretextual and to create a reasonable inference that race was a motivating factor. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Assuming that Bozeman can establish a prima facie case, she has not met her burden to present evidence sufficient to create a fact issue as to whether Unilever's articulated reason for removing her from training in the mix mill area was a pretext for race discrimination. Unilever

---

[2] Bozeman testified that her claim for race discrimination and her claim for color discrimination are the same claim.

states that it removed Bozeman from training because of her poor evaluations. Although Bozeman challenges whether those evaluations were correct, that is not the inquiry at the pretext stage. *Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except that those judgments involve intentional discrimination."). Rather, the question is whether Bozeman's race motivated the decision to remove Bozeman from her training position.

As evidence of pretext, Bozeman offers testimony from Greenwood that there were complaints about Dunn's performance during training. "While evidence of disparate treatment can of course support an assertion of pretext, the employee or employees with whom a plaintiff wishes to be compared must have been similarly situated to the plaintiff in all relevant respects." *Forrest*, 285 F.3d at 691-92. On pretext, this is a rigorous test. *Rodgers*, 417 F.3d at 853. Specifically, the "individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

Bozeman has not presented sufficient evidence from which the Court can determine that Dunn is similarly situated "in all relevant respects" to Bozeman. The Court has no way to compare the performance of Dunn with that of Bozeman. Greenwood himself testified that he had not seen any of Dunn's evaluations, nor had he observed Dunn's performance first hand. There is no evidence that Dunn and Bozeman had the same supervisors during training. The only evidence in the record concerning Dunn's training supervisors is an "Award of Training Slot" sheet listing Alex Bogard as Dunn's trainer and Orlando Phillips as Dunn's trainer auditor. Neither Bogard nor

Phillips, however, was involved in Bozeman's training.

Bozeman also asserts that Unilever applied new guidelines for the performance evaluations to her during her training, in violation of company policy but did not apply those guidelines to Dunn during her training. Even if that were true, a reasonable jury could not find that the performance evaluations were a pretext for race discrimination. It is undisputed that Edwards – a black male – was next on the training list after Bozeman; that he began training in the mix mill area shortly after Bozeman was removed; that he had the same shift coordinator, Kendrick, whom Bozeman accuses of harboring discriminatory animus against her; and that he completed his training and was certified. A reasonable jury could not infer that the reason Bozeman was removed from training was because of her race, and not her poor evaluations, when Edwards, a black male who was Bozeman's replacement, successfully completed his training under the same supervisor. Furthermore, the committee that made the decision to remove Bozeman consisted of three members of Bozeman's protected class, all of whom concurred in the decision. Under these circumstances, Bozeman has failed to present a triable issue of fact as to whether Unilever's legitimate, nondiscriminatory reason for removing her from training in the mix mill area was a pretext for race discrimination.

## CONCLUSION

For the foregoing reasons, Unilever's motion for summary judgment is GRANTED. Document #32.

IT IS SO ORDERED this 29th day of January, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE